UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                      Case No. 15-20624

vs.                                        HON. MARK A. GOLDSMITH

CHRIS COLEMAN,

       Defendant.
_____/

**OPINION & ORDER
DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE (Dkt. 297)**

Defendant Chris Coleman pleaded guilty to conspiring to distribute and possessing with intent to distribute heroin, as well as distributing heroin resulting in serious bodily injury. Rule 11 Plea Agreement (Dkt. 106). On July 26, 2016, Judge Arthur Tarnow sentenced Coleman to 240 months' imprisonment. Judgment (Dkt. 142).[1] Coleman is currently incarcerated at the McDowell Federal Correctional Institution in Welch, West Virginia. His projected release date is January 24, 2033.

This matter is now before the Court on Coleman's motion to reduce his sentence (Dkt. 297). Having considered all briefing and record materials submitted by the parties, the Court denies Coleman's motion.[2]

---

[1] This matter was reassigned to the undersigned on March 23, 2022.

[2] Judge Tarnow conducted a Zoom hearing on this motion and took the motion under advisement. The undersigned concludes that further oral argument would not aid the Court's decisional process; therefore, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2). In addition to the motion, the briefing includes the Government's response (Dkt. 302), Coleman's reply (Dkt. 304), the Government's supplemental briefs (Dkts. 307, 310), Coleman's supplemental briefs (Dkts. 306, 308), and the Government's notices of supplemental authority (Dkts. 305, 310).

I. ANALYSIS

The First Step Act (FSA) modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3582(c), such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences. United States v. Ruffin, 978 F.3d 1000, 1003–1004 (6th Cir. 2020).³ Before granting a compassionate release motion, a district court must engage in a three-step inquiry: (i) the court must find that "extraordinary and compelling reasons warrant [a sentence] reduction"; (ii) it must ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (iii) it must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." United States v. Jones, 980 F.3d 1098, 1101 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). If all of those requirements are met, the district court "may reduce the term of imprisonment," but it need not do so. 18 U.S.C. § 3582(c)(1)(A).

Regarding the first step of the inquiry, the United States Court of Appeals for the Sixth Circuit has held that, with respect to motions for compassionate release filed by imprisoned individuals, "extraordinary and compelling" reasons are not limited to those set forth in U.S.S.G. § 1B1.13. Jones, 980 F.3d at 1109. It has further held that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the [FSA], district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." Id.

---

³ Before an inmate moves for compassionate release under § 3582(c)(1), the inmate must either exhaust his or her administrative remedies with the Bureau of Prisons (BOP) or wait 30 days from when the inmate filed a request with his or her warden. 18 U.S.C. § 3582(c)(1)(A); United States v. Alam, 960 F.3d 831, 832 (6th Cir. 2020). Here, the Government concedes that Coleman has satisfied the administrative exhaustion requirement. See Resp. at 6.

The Court considers whether (i) extraordinary and compelling circumstances exist and (ii) the § 3553(a) factors support reducing Coleman's sentence.

### A. Extraordinary and Compelling Circumstances

Coleman argues that the COVID-19 pandemic and his disproportionately lengthy sentence are extraordinary and compelling reasons to reduce his sentence. The Court addresses each asserted reason in turn.

#### i. COVID-19

With respect to motions for compassionate release premised on a defendant's fear of contracting and suffering severe illness from COVID-19, the Sixth Circuit has held that "generalized fears of contracting COVID-19, without more, do not constitute a compelling reason" to grant compassionate release. United States v. Ramadan, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020). Prior to the development of the COVID-19 vaccines, courts would generally consult the guidance on high-risk factors published by the Centers for Disease Control and Prevention (CDC) to determine whether a defendant's specific conditions placed the defendant at a higher risk of suffering severe illness from COVID-19. See United States v. Elias, 984 F.3d 516, 521 (6th Cir. 2021). However, following the development of the vaccines, courts now examine whether a defendant has been offered a COVID-19 vaccine, because "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021).

Coleman argues that his "history of smoking," race (Black), and body mass index (BMI) of 27.5 increase his risk of severe illness and death from the virus.[4] The CDC recognizes some of these conditions as conditions that may make an individual more likely to get very sick from COVID-19.[5] But Coleman's fear of suffering severe illness from COVID-19 is ultimately non-compelling due to his vaccination status. See Lemons, 15 F.4th at 751 ("[A] defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction."). Specifically, Coleman received his second dose of the two-dose Pfizer-BioNTech vaccine on May 19, 2021. BOP Health Records at PageID.2698 (Dkt. 303).

While it is true that a prisoner who is "unable to receive or benefit from a vaccine" may still be able to show "extraordinary and compelling reasons" warranting a sentence reduction, Coleman has not shown that he is medically unable to receive or benefit from the vaccine. Lemons, 15 F.4th at 751 (citing United States v. Ugbah, 4 F.4th 595, 597 (7th Cir. 2021)) (affirming denial

---

[4] After filing his motion, Coleman—who has no stated history of asthma—requested that the BOP test him for asthma. On September 23, 2021, the Government reported that "Coleman had an appointment to be evaluated for asthma, per Coleman's request, on September 14, 2021, but he failed to show up for the appointment." Gov't 2d Supp. Br. at 6 (Dkt. 309). At that time, the BOP had scheduled Coleman for another appointment. Id. Neither party has since provided the Court with an update. Even assuming that Coleman has asthma, his fear of COVID-19 in the prison setting is non-compelling, given his vaccination status.

[5] Specifically, the CDC recognizes being overweight (defined as a BMI of 25 or higher) and being a former smoker as conditions that may make an individual more likely to get very sick from COVID-19. See CDC, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 24, 2022). While "[r]ace and ethnicity are risk markers for other underlying conditions that affect health," race itself does not increase an individual's likelihood of severe illness from COVID-19. See CDC, "Risk for COVID-19 Infection, Hospitalization, and Death By Race/Ethnicity," https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-race-ethnicity.html (last visited Mar. 24, 2022).

of compassionate release to prisoner who refused a vaccine and "never contended that he is medically unable to receive or benefit from the available vaccines"). Rather, Coleman argues that his vaccination status should not preclude him from being released because the vaccine is not 100% effective against COVID-19 variants. Reply at 5; 1st Def. Supp. Br. at 3 (Dkt. 306) ("[T]he vaccine is less effective against variants of the virus, particularly the delta variant . . . ."); 2d Def. Supp. Br. at 2 (Dkt. 308) ("[E]xperts believe breakthrough infections are likelier after exposure to the Delta variant than to prior forms of the virus."). But Lemons makes no such exception. Accordingly, this Court and others have rejected similar arguments. See, e.g., United States v. Walker, No. 12-20287, 2022 WL 834008, at *3 (E.D. Mich. Mar. 21, 2022) (rejecting prisoner's argument that "his vaccination status should not preclude granting him compassionate release, as the recent emergence of several variants has increased the frequency of breakthrough cases"); United States v. Butler, No. 18-cr-20801, 2022 WL 317753, at *4 (E.D. Mich. Feb. 2, 2022) ("Because existing COVID-19 vaccines diminish the health risks of the Delta and Omicron variants, and these vaccines are available to all federal prisoners, incarceration itself does not increase the danger of COVID-19 to Defendant."); United States v. Dale, No. 92-81127, 2022 WL 163612, at *4 (E.D. Mich. Jan. 18, 2022) (holding that the defendant's argument that "the risk of breakthrough infections persists" even though he had received two doses of a COVID-19 vaccine was "undercut[]" by Lemons).

Coleman's fear of COVID-19 is further undercut by the available data. Currently, there are no actively confirmed COVID-19 cases among staff (and only one confirmed case among

5

inmates) at FCI McDowell.[6] Further, of the 1,519 inmates at FCI McDowell,[7] 1,216 have been vaccinated (80.05%).[8]

For these reasons, Coleman's fear of contracting and suffering severe illness from COVID-19 is not a compelling and extraordinary reason to release him.

### ii. Sentencing Disparity

Coleman argues that he is entitled to a sentence reduction because his sentence is unusually long and disproportionately greater than his codefendants' sentences. Mot. at 12 (citing United States v. McDonel, 513 F. Supp. 3d 752, 756 (E.D. Mich. Jan. 13, 2021) (holding that a defendant was entitled to compassionate release "because of his harsh sentence—which would not be imposed under the law today—together with his youth and record of rehabilitation")). Although some district courts, such as the McDonel court, at one time surmised that a significant sentencing disparity—in combination with other factors—could warrant compassionate release, more recent circuit case law has rejected such a hypothesis. In United States v. Hunter, the Sixth Circuit clarified that sentencing disparities between a defendant and his codefendants—"facts that existed at sentencing"—cannot constitute extraordinary and compelling reasons to release a prisoner. 12 F.4th 555, 571 (6th Cir. 2021). "[E]ven if the sentence disparity did not exist at the time [the defendant] was sentenced, subsequent leniency in another defendant's case says nothing about how [the defendant's] personal circumstances have changed since he was sentenced." Id. at 571–572. In other words, "[t]here is nothing 'extraordinary' or 'compelling' about a sentence disparity

---

[6] BOP, "COVID-19 Cases," https://www.bop.gov/coronavirus/ (last visited Apr. 5, 2022).

[7] BOP, "FCI McDowell," https://www.bop.gov/locations/institutions/mcd/ (last visited Mar. 24, 2022).

[8] BOP, "COVID-19 Vaccine Implementation," https://www.bop.gov/coronavirus/ (last visited Apr. 5, 2022).

that results from a co-defendant's decision to plead guilty." Id. at 572. Thus, Coleman's argument—that his lengthy and disproportionate sentence is extraordinary and compelling—fails.

Coleman has not shown an extraordinary or compelling reason to grant him compassionate release. Even if he had, his release would still be unwarranted based on the § 3553(a) factors, as explained below.

### B. Section 3553(a) Factors

Before granting a sentence reduction under the FSA, the Court must consider the § 3553(a) factors, which include the nature and circumstances of a defendant's offenses, the seriousness of the offenses, the need to promote respect for the law, and the need to protect the public from further crimes by the defendant.

Coleman's crimes were undoubtedly serious. For several years, Coleman actively participated in a heroin trafficking conspiracy that distributed large quantities of heroin. Heroin is a Schedule I controlled substance, meaning that it has no accepted medical use and a high potential for abuse. The circulation of such addictive "drugs presents a grave danger to the community's health and wellbeing." United States v. Smith, No. 10-20388, 2021 WL 3077879, at *3 (E.D. Mich. July 21, 2021) (finding that the § 3553(a) factors weighed against granting compassionate release to a defendant who was convicted for possessing with intent to distribute heroin and cocaine). The grave dangers of heroin are, unfortunately, exemplified by this very case. As an active and steady distributor, Coleman sold heroin to a person that, after consuming the heroin, nearly died.

Coleman contends that he is no longer a danger to society because he has made "significant strides toward rehabilitation," such as seeking out work assignments, earning his GED, and participating in a drug education course. Mot. at 17–19. He also argues that his "significant social

7

and emotional support from his family" will help him "as he transitions back to life outside of prison." Id. at 19. The Court commends Coleman on his efforts towards rehabilitation. The Court also notes that his family's support is encouraging, albeit far from dispositive as it evidently was previously insufficient to prevent Coleman from committing crimes. Ultimately, the Court does not share in Coleman's confidence that, if released now, he would not endanger the community. Coleman's long criminal history suggests that he is not so easily deterred. This history consists of "nine convictions between the ages of 17 and 38, at least six instances of violating probation, and four open arrest warrants involving failure to appear"; further, at least two of his prior offenses involved dangerous weapons—"one in the context of domestic violence and another in connection with possession of heroin." Resp. at 24 (citing Presentence Investigation Report ¶¶ 33, 39). Further, Coleman's behavior in prison has not been model. Specifically, he has had four disciplinary incidents involving being insolent to staff members, smoking in an unauthorized area, "disruptive conduct-greatest," and possessing drugs/alcohol. Inmate Discipline Data (Dkt. 302-3). All of this suggests that, if released now, there is a real risk that Coleman would commit further crimes.

Also weighing against Coleman is the fact that he has served only approximately six and a half years of his 20-year sentence. In other words, he has served less than half of his sentence. Releasing Coleman when the majority of his sentence remains would not promote respect for the law or provide just punishment. See, e.g., Ruffin, 978 F.3d at 1008 (affirming district court decision that § 3553(a) factors did not support a sentence reduction in part because the defendant was yet to serve even half of his sentence); United States v. Richards, No. 12-20372, 2021 WL 912389, at *3 (E.D. Mich. Mar. 10, 2021) ("[A]llowing Defendant to be released after serving less

8

than half of his sentence would not promote respect for the law or proper deterrence, [or] provide just punishment . . . .").

Coleman argues that his sentence is disproportionately long compared to his codefendants', see Mot. at 21, thereby suggesting that his time served should be assessed against a shorter sentence rather than the 240-month sentence that he received. While one of the § 3553(a) factors calls for the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," see 18 U.S.C. § 3553(a)(6), this one factor does not cause the scale to tip in his favor. The severity of Coleman's crime—combined with his serious criminal history and continued disciplinary incidents in prison—counsel against reducing Coleman's sentence.

The § 3553(a) factors, therefore, weigh against granting Coleman's motion.

## II. CONCLUSION

For the reasons stated above, Coleman's motion for a sentence reduction (Dkt. 297) is denied.

SO ORDERED.

Dated: April 6, 2022  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 6, 2022.

s/Karri Sandusky
KARRI SANDUSKY
Case Manager